IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY TOLIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-1064-NJR-DGW |
| | ) |
| DARIN OLMSTED, | ) |
| CYNTHIA JORDAN, and | ) |
| UNKNOWN PARTY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Toliver is an inmate in the custody of the Illinois Department of Corrections at Menard Correctional Center. He filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that prison officials violated his constitutional rights while he was incarcerated at Pinckneyville Correctional Center. He was permitted to proceed against Defendants Darin Olmsted, Cynthia Jordan, and an unnamed nurse on one count of deliberate indifference to a serious medical need in violation of the Eighth Amendment (Doc. 6).

This matter is currently before the Court on the Motion for Summary Judgment filed by Defendants Olmsted and Jordan on February 29, 2016 (Doc. 49), to which Tolliver filed a response (Docs. 54, 55). For the reasons set forth below, the motion is granted.

## BACKGROUND

Anthony Toliver was diagnosed with Bell's Palsy on July 9, 2013, and prescribed prednisone to treat the condition (Doc. 50-1, p. 12). For patients with Bell's Palsy, one side of the face is temporarily paralyzed due to damage or trauma to a facial nerve. *Bell's Palsy Fact Sheet*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, http://www.ninds.nih.gov/disorders/bells/detail_bells.htm (last visited Aug. 15, 2016). The condition can cause drooping of the eyelid and the corner of the mouth and headaches, among other things. *Id.* Prednisone, which is a steroid used to reduce inflammation and swelling, has been shown to be effective in treating Bell's Palsy. *Id.*

On July 18, 2013, Tolliver was still experiencing swelling and severe pain on the left side of his face (Doc. 50-1, p. 3; Doc. 50-2, p. 3). He was seen by a nurse at 9:50 a.m., and Tolliver reported that the left side of his face and head was "pulsating," that he'd had a headache for a week, and his pain was a 10 out of 10 (Doc. 50-1, p. 3). The nurse gave him Tylenol and a cool compress and referred him to a doctor (*Id.*). It seems that the Tylenol and cool compress were ineffective, at least in the long-term, because that evening at around 11:00 p.m., Tolliver stopped Defendant Olmsted, a correctional officer, in front of his cell (Doc. 50-2, p. 3, Doc. 50-3, p. 1). According to Olmsted, Tolliver said that he had a "real bad headache" and that he was suffering from Bell's Palsy (Doc. 50-3, p. 1). Tolliver testified that he also showed Defendant Olmsted that his face was swollen and told Olmsted that his medication wasn't working and he needed to see a nurse (Doc. 50-2, pp. 3, 6).

Olmsted informed his supervisor about Tolliver's complaints and contacted the healthcare unit ("HCU") (Doc. 50-2, pp. 3, 4; Doc. 50-3, p. 1). According to Olmsted, the HCU staff told him that "Tolliver's condition was not life-threatening and that the doctor would be in the following morning" (*Id.* at p. 2). When Olmsted did not immediately return to Tolliver's cell, Tolliver repeatedly pressed his emergency call button to no avail (Doc. 50-2, p. 3). Tolliver claims that Olmsted finally came back to his cell until around 2:00 a.m. and told him that the HCU said there was nothing they could do for him (*Id.* at pp. 3, 4). There was no other significant interaction between Tolliver and Olmsted after this 2:00 a.m. exchange.

Later that morning, at around 5:00 or 6:00 a.m. when Tolliver was released from his cell to go to the chow hall for breakfast, he sought help from Cynthia Jordan, who was a lieutenant (Doc. 50-2, p. 4). She told Tolliver that she was aware of his situation but there was nothing she could do because the doctor was not in (*Id.*). Tolliver again requested to go to the healthcare unit, but Jordan told him to get in line for breakfast (*Id.*). When he finished breakfast, Tolliver approached Jordan again and told her that he needed to go to the healthcare unit. He claims that she told him to get back into line or he would be sent to segregation (*Id.* 5). When Tolliver balked, Jordan placed Tolliver in handcuffs and escorted him to his cell (*Id.*).[1] Jordan told Tolliver that she would call the

---

[1] Tolliver's testimony reads:
> I came out of chow and I stopped her and was, like, come on, Ms. Jordan, I mean, look at my face. I need to go to healthcare. [T]hen She like she started snapping on me. Man, get back in line. I'll take you to seg. You want to go to seg. You go to seg, you know you ain't going to get no medical treatment back there. She's like get in line. I'm like damn. What the fuck. Then she told me to cuff up. She put me in handcuffs. Man, she put me in handcuffs. Then I started talking to her, like, man, you going to take me to seg because I need medical attention. Then she's looking at me. Then she started talking to me. Then she walked me into the cell house.

(Doc. 50-2, p. 5).

nurse, and after making the call, she informed Tolliver that the doctor would be in at 7:00 a.m. and that he would see the doctor then (*Id.*). Tolliver had no further relevant interaction with Jordan.

Tolliver testified that he spoke to a nurse that morning when she came through the cell house, and the nurse gave him some Tylenol and told him that he was scheduled to see the doctor (Doc. 50-2, p. 5). Tolliver's medical records indicate that he was, in fact, scheduled to see the doctor on July 19th, but the appointment had to be rescheduled because Tolliver was moved (Doc. 50-1, p. 15). The medical records further indicate that Tolliver was not seen on at Nurse Sick Call on July 22nd because he had been moved to a different cell (*Id.*). On July 23rd and 24th, Tolliver refused to be seen at Nurse Sick Call, stating that he was "supposed to see the doctor" (*Id.* at p. 16). On July 25th, Tolliver was finally seen by a doctor (*see* Doc. 50-1, p. 17). The notes in the medical record from that visit, however, are illegible (*see id.*).

## DISCUSSION

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, a plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Second, a plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *Greeno*, 414 F.3d at 653.

Defendants Olmsted and Jordan do not dispute that Tolliver had a serious medical condition (*see* Doc. 50). Instead, they argue that they are entitled to summary judgment because they were not deliberately indifferent to Tolliver's needs (Doc. 50, pp. 6–9). After carefully examining the record in this case, the Court agrees.

Deliberate indifference "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution."). A prison official acts with deliberate indifference if he knows of a serious risk to the prisoner's health and consciously disregards that risk. *Holloway*, 700 F.3d at 1073. Put differently, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Greeno*, 414 F.3d at 653 (citation omitted). For non-medical staff at the prison, such as correctional officers like Defendants Olmsted and Jordan, they are

"entitled to defer to the judgment of jail health professionals so long as [they] did not ignore [the prisoner]." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (alterations in original) (quoting *Berry,* 604 F.3d at 440). *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants cannot simply ignore an inmate's plight."); *see also Greeno*, 414 F.3d at 656 (stating that "[p]erhaps it would be a different matter if [the non-medical defendant] had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns."). "The only exception to this rule is that nonmedical officers may be found deliberately indifferent if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *King*, 680 F.3d at 1018 (citing *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir.2008)).

Here, the undisputed facts show that Olmsted or Jordan deferred to the HCU staff and did not ignore Tolliver. When Tolliver complained to Olmsted about his medical condition, Olmsted called his supervisor and the HCU for instructions. Olmsted was informed by the HCU staff that Tolliver's condition was not an emergency and that, essentially, the doctor would see him in the morning. As for Jordan, even though she threatened to take Tolliver to segregation when he complained about his condition, she also called a nurse and was told that Tolliver was going to see the doctor when the doctor got in. There is no evidence that Olmsted or Jordan were aware, or had reason to suspect, that the medical staff was mistreating or failing to treat Tolliver's condition. Accordingly, Olmsted and Jordan are both entitled to judgment as a matter of law on

Tolliver's claim of deliberate indifference.

Defendants Olmsted and Jordan also argue that they are entitled to qualified immunity (Doc. 50, pp. 10–12). "Generally, qualified immunity protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) (citing *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)). Here, there is no need to consider the issue of qualified immunity because the Court has already determined that the evidence, when viewed in a light most favorable to Tolliver, does not establish a genuine issue of fact as to whether Defendants Olmsted and Jordan violated Tolliver's Eighth Amendment rights. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997).

Because Defendants Olmsted and Jordan are entitled to summary judgment, the only remaining Defendant is the unknown party, a nurse who allegedly mistreated or failed to treat Tolliver (*see* Doc. 1; Doc. 6). The Court has determined, however, that this Defendant must be dismissed. On October 28, 2014, Tolliver was informed that service would not be made on the unknown party until he/she was properly named in an amended complaint (Doc. 6). On January 27, 2015, Tolliver was directed to produce to Defendants descriptive information about the unknown party in order for Defendants to identify that person (Doc. 13). Tolliver further was informed that by May 22, 2015, he must move to amend his complaint to include the name of the unknown party or take other steps to name that person (*Id.*). Tolliver was warned that the failure to do so would result in dismissal of the unknown party (*Id.*). As of the date of this Order, Tolliver has

not identified or described the unknown party or sought to amend his complaint, and nothing in the record indicates that this individual was served with process. Consequently, the unknown party must be dismissed.

## CONCLUSION

The Motion for Summary Judgment filed by Defendants Cynthia Jordan and Darin Olmsted on February 29, 2016 (Doc. 49) is **GRANTED**, and they are **DISMISSED with prejudice** as Defendants. Unknown Party is also **DISMISSED with prejudice** as a Defendant. Consequently, this action is **DISMISSED** in its entirety, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   August 15, 2016**

**NANCY J. ROSENSTENGEL**
**United States District Judge**